## THE UNITED STATES, APPELLANTS, *v.* THOMAS O. LARKIN AND JOHN S. MISSROON.

Where there was a grant of land in California made by the governor to the secretary of the government, and neither the petition nor the patent stated the quantity, but the concession and direction by the governor to the proper officer to issue the patent, limited the quantity to eleven square leagues, this concession and direction constitute a part of the evidence of title, and are sufficient to make a good grant for that amount.

The petition to the governor was accompanied with a sketch or map giving the location and boundaries of the tract. The patent refers to this sketch, and by it the land can be located.

The fraudulent nature of the grant was not made a question in the court below and therefore cannot be made here. Moreover, there is no evidence of fraud.

The objections that the case was not submitted to the departmental assembly, and that judicial possession was not taken of the land, are overruled by the case of United States *v.* Fremont, 17 How. 542.

Neither the act of the Mexican congress of 1824, nor the regulations of 1828, prescribe any particular form of grants or patents of the public lands. And there is no uniformity with respect to the conditions imposed upon the grantee, either in those which relate to the cultivation or taking possession of the land. The absence of the condition of settlement within a limited time will not avoid the grant in this case.

This was an appeal from the district court of the United States for the northern district of California.

The facts are stated in the opinion of the court.

It was argued by Mr. Cushing, (attorney-general,) for the United States, and by *Mr. Lawrence,* with whom was *Mr. Goold,* for the appellees.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the district court of the United States for the northern district of California, in which a land claim was confirmed to the appellees, and which had been previously confirmed by the board of commissioners.

The grant was made to Manuel Jimeno, who was at the time secretary of the government of California, by Governor Micheltorena, on the 4th November, 1844.

The petition for the same is as follows:—

" Excellent Sir Governor:

" I, Manuel Jimeno Cassarin, a resident of this department, represent before Y. E., with due respect, that, inasmuch as it suits my interests to establish a rancho about (port) the Sacramento River, according to the accompanying sketch, I entreat Y. E. to be pleased to grant to me, since it lies completely unoccupied, and nobody has petitioned for it, the land, as it is made apparent by the general map, formed this year by the Land Surveyor Bidwell. By which grace I will receive mercy from Y. E.

            (Signed)          Manuel Jimeno.

" Monterey, November the 1st, 1844."

And on the same day the governor made the following memorandum:—

                      "Monterey, November 1, 1844.

" The party concerned not being able to report, on account of his being at a time concerned, party and secretary of govern-

ment, I order that, whatever it may be convenient to have in mind, for the purpose of coming to a determination, be brought to my knowledge.

(Signed)     MICHELTORENA."

And on the next day directions were given for the issuing of the patent, as follows :—

"Monterey, November the 2d, 1844.

" After having seen the petition at the head of this record of proceedings, the uncultivated state in which the land petitioned for lies, according to the general map which has been formed of the Sacramento River, and whatever else it was found convenient to attend to, in conformity with the laws and regulations on the subject, I declare Don Manuel Jimeno the owner of eleven square leagues ( " Sitios de Ganado Mayor " ) between Sacramento River, the ranch which the children of Senor Larkin have applied for, and the vacant lands lying south, as the respective sketch shows. Let the corresponding patent be issued; let it be entered in the respective book ; and let it be delivered to the party concerned, for his security, and other ends.

(Signed)     MICHELTORENA."

And on the 4th November the patent was issued, in the following terms :—

" [L. S.] The citizen Manuel Micheltorena, general [Maritime Custom House, of brigade of the Mexican army, adjutant-Monterey.]' general of the staff of the same, governor, commandant-general, and inspector of the department of Californias.

" [L. S.] Whereas Don Manuel Jimeno has peti-[Govern't of the depart- tioned for his personal benefit for the tract ment of the Californias.] of land which is unoccupied between the ranch which has been granted to the children of Don Tomas O. Larkin, the River Sacramento, and the uncultivated lands which are on the side of the south, entirely in conformity with the showing in the corresponding plan. The necessary preliminaries and investigations having been gone through with, as directed by the laws and regulations on the subject; exercising the authority in me vested, in the name of the Mexican nation, I have just granted to him the said land, subject to the following conditions :—

" 1. He may inclose it without prejudice to the cross-ways, roads, and right of way ; he shall enjoy it freely and exclusively, destining it to the use and cultivation which best suits him.

" 2. He shall solicit the proper judge to give him juridical pos-

session of it, in virtue of this grant, for the which boundaries thereof shall be marked out, within the limits of which, besides the usual landmarks, he shall plant some fruit-bearing or some forest trees of some utility.

" 3. If he shall contravene these conditions he will lose his right to the land.

" Wherefore, I order this title, being of itself duly firm and valid. Record thereof shall be taken in the proper book, and that it be delivered to the party interested for his security, and for other purposes.

" Given in Monterey, this fourth day of November, one thousand eight hundred and forty-four.

(Sg'd)      Man'l Michelt'a.

(Sg'd)      Franc'o Arce,

First Official.

" The record of this grant has been taken in the proper book, folio.

Franc'o Arce."

On the 21st April, 1846, Jimeno made application to the departmental assembly for a confirmation of his grant.

" To the excellent departmental assembly :—

" I, Manuel Jimeno, represent before Y. E., with all due respect, that by the adjoined title is proved the grant, made in my favor, of a tract of land on the margins of the Sacramento ('corresponde') River, and, inasmuch as it pertains (correspond) to Y. E., to give Y. E. approval.

" I beg Y. E. to deign to grant it to me, whereby I will receive grace and mercy. I swear so ; and Y. E. will be pleased to excuse my usage of common paper, there being none of the corresponding paper.

(Signed)      Manuel Jimeno.

" Monterey, April the 21st, 1846."

And on the 3d June, the same year, that body acted upon the application of which we have the following record :—

"Angeles, June the 3d, 1846.

" Account having been given in to-day's session to the excellent departmental assembly, with this instancy, it was ordered to be referred, together with the respective record of proceedings, to the committee on vacant lands.

(Signed)      Augustin Olivera."

Jimeno and his wife conveyed all their interest in the land to the appellees on the 30th August, 1847.; soon after which the grantees took actual possession, and have occupied and possessed the same ever since.

The petition to the governor was accompanied with a sketch or map giving the location, and boundaries of the tract solicited, and referred, also, to a general map of the valley of the Sacramento River, made by Bidwell, a land surveyor, the same year. The quantity of land was not specifically designated in the petition. Neither does the patent itself designate the quantity, but refers to the sketch accompanying the petition. But the concession and direction by the governor to the proper officer to issue the patent, limits the quantity to eleven square leagues, and which concession and direction constitute a part of the evidence of the title, or, according to the Mexican vocabulary, a part of the "expediente," and therefore may well qualify and limit the quantity to. this number, even if the number of leagues within the boundaries, as given by the rough sketch, exceeded it; especially should this construction be given as the power of the governor to grant to a single person was limited so as not to exceed this quantity, according to the 12th section of the decree of the Mexican congress of the 18th August, 1824.

The decree of the commissioners, and also of the district court, very properly limited the confirmation to the extent only of eleven square leagues, provided the quantity should be contained within the sketch called for by the patent, and if there should be less than that quantity, then no more than this lesser quantity is confirmed.

No question appears to have been made as to the practicability of locating the grant in the tribunals below; nor do we see any ground upon which such a question could have been properly raised in the case.

The plan or sketch found in the expediente in connection with the description given in the grant furnishes all the materials essential to determine the boundaries. Three sides are given, and the quantity will guide the surveyor in closing the lines by running the fourth.

It has been suggested on the argument here, that this grant is a fictitious one, made by the governor to the secretary of the territory according to the forms of law, for the purpose of defrauding the United States. One answer to the suggestion is, that no objection as to the *bona fides* of the grant was taken before either of the tribunals below, where it should have been made, if relied on by the government, so as to have given the claimants an opportunity to have met it. To permit it to be taken in the appellate court for the first time, where there is no

opportunity for explanation, would be a surprise upon them, of which they might justly complain. The commissioners say, "the grant is fully proven, and we find no cause to doubt its genuineness." And the judges of the district court observe, "that the grant is fully proved; nor is its genuineness called in question."

Besides this answer to the suggestion, even were we to entertain the question, we see nothing in the record to justify the imputation. The grant was made 4th November, 1844, at a time when California was in the full possession of the Mexican authorities, and more than a year previous to any hostile entry of the forces of the United States, and more than three years before the cession of the country to this government. The fact that seems most to be relied on to maintain the suggestion is, that Jimeno, the grantee, was the secretary of the territory at the time, and hence the grant an act of favoritism. But there is nothing in the decree of 18th August, 1824, of the Mexican congress, or in the regulations of the 21st November, 1828, forbidding such grants. On the contrary, it is known to be the usual mode of remuneration to an officer of the government for meritorious public services. A preference is given to such officers in the distribution of the public lands by the 9th article of decree of 1824, above referred to.

It is also objected that the grant does not contain the condition of confirmation by the departmental assembly; and also that there has been no confirmation by that body.

The 5th regulation of November, 1828, provides, that grants to individuals or families shall not be definitively valid without the previous approbation of the departmental assembly to which the respective "expedientes" shall be referred. There is nothing in this or any other regulation that requires this condition to be inserted in the patent.

It appears from the records in the case, that the grant was submitted to this body by Jimeno on the 21st April, 1846; and that that body, on the 3d June following, referred it to the committee on vacant lands; but, for aught that appears, no further action was had upon it. The expediente, however, which was before this body, seems afterwards to have been returned to the appropriate office for the keeping of these records, and was found in the government archives.

The 6th regulation of 1828 provides that, "if the governor does not obtain the approval of the departmental assembly, he shall report the same to the supreme government," together with the "expediente," for its decision. Inasmuch as the record of the title was found returned by the governor to the government archives, and not forwarded to the supreme government, it is

insisted, on behalf of the claimants, that the fair presumption is, that the grant had been approved; otherwise, it would not have been returned to government archives.

However this may be, it is not important to determine, as it was settled, after full consideration, in the case of Fremont *v.* United States, 17 How. 542, 563, that the omission to procure the confirmation under circumstances existing similar to those attending this case did not operate to defeat or avoid the title.

The grant, in that case, to Alvarado, was made by the same governor, and in the same year of the present grant, and we may add that the grantee was a military officer of the government at the time; the present grantee was a civil officer.

The same case also furnishes a full answer to the objections, that judicial possession was not taken of the land. We refer to the grounds there stated without repeating them, as the facts in this case fully warrant the view there presented.

It is also objected that the grant does not contain the usual condition of cultivation and habitation within the year. Neither the act of the Mexican congress of 1824 nor the regulations of 1828, prescribe any particular form of grants or patents of the public lands. And there appears to have been no uniformity in the conditions annexed in those issued by the different political chiefs, nor even as it respects those issued by the same individual. Great latitude seems to have been exercised in prescribing these conditions, both as to the number and the nature of them; also, in respect to the time within which the possession was to be taken when inserted as a condition  It is understood that the condition was usually dispensed with in cases where the grantee was in actual possession at the time of the grant. It was probably dispensed with in the present case; as the grantee was the secretary of the territory, and his services required at the seat of government; especially, as it appears that a civil disturbance had broken out between the political authorities, and which continued down until possession was taken of the country by the United States in 1846 and 1847.

We think it would be going further than required by any of the provisions of the law of 1824, or regulations of 1828, to hold the grant void for the want of this condition of possession within a limited time; more especially, as it appears that actual possession was taken of the land as soon as the state and condition of the country would admit, and which has been held ever since. And we are the more bound to hold this construction in respect to this particular condition, as the court have already held, after the fullest consideration, that, even in cases where the condition is contained in the grant, the non-compliance with its terms will not necessarily have the effect to avoid the title. Circumstances may excuse the omission.

Upon the whole, we are satisfied that the judgment of the court below was right, and should be affirmed.

Mr. Justice DANIEL and Mr. Justice CAMPBELL, dissented. For the reasons of Mr. Justice Daniel's dissent, see the preceding case of Arguello *v.* The United States.

Mr. Justice CAMPBELL, dissenting.

In exercising the jurisdiction conferred by the act of congress of the 3d March, 1851, in reference to claims for lands in California, it seems to me this court should be satisfied that the claimant has received a title from the governor who was a legal representative of the Mexican nation, and that no credit should attach to the acts of the usurpers who from time to time occasioned anarchy and civil war in that territory; that the grant should be, in spirit and effect, a colonization grant, in accordance with the Mexican laws; that it should describe the lands so that they can be identified; and that the conditions of improvement and occupancy should be substantially fulfilled. The case before us, is a claim for eleven leagues of land lying on the Sacramento River, with that length and of a league in width. The papers purport to have been made during the four first days of November, 1844, by the governor of the territory, in favor of one Jimeno, the secretary of the government. The usual inquiries could not be made; for the party interested was charged with the performance of that duty; though the governor recites that, in making the grant, he had conformed to the regulations. The patent issued the 4th November, 1844, subject to the conditions that juridical possession should be taken, and the proper boundaries marked out, and that the grantee should plant fruit-bearing, or forest trees of some utility; and if he failed to perform the conditions he should lose the land. No act was done by this person during 1844 or 1845, or the early part of 1846, which indicates any claim on his part to this land. There is a petition entered by himself on the expediente, directed to the departmental assembly, dated 21st April, 1846, asking for a confirmation and a certificate of one Olivera, dated 3d June, 1846, that it had been presented and referred to the committee of public lands. Here the connection of Jimeno terminates. The preparation of these papers is the whole extent of that connection. In August, 1847, the petitioner, Larkin, consul of the United States at Monterey, purchases from Jimeno this claim for one thousand dollars, or rather, that is, the price recited in the deed of Jimeno to him. The American flag had been raised at Monterey twelve months before, and the whole country was then in the possession of General Kearney.

We have some unsatisfactory evidence that Larkin, either in 1847 or 1848 sent a Spaniard to enter upon this land; a camp, in which he might find a shelter and some conveniences for collecting cattle, form the facts of this settlement.

Neither Jimeno nor Larkin entered upon or occupied the land. This evidence merely shows that Larkin was laying the foundations for a claim upon the United States, and was wholly unconnected with the Mexican regulations. The evidence satisfies me that this claim was fabricated after the difficulties between the United States and Mexico had occurred, with a view to enable the American consul at Monterey to profit from it, in the event of the cession of the country to the United States. I lay no stress upon the fact that the papers are found in the archives. I presume Jimeno was the keeper of those archives. I dissent from the judgment of the court confirming this claim.